IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONNIE GOOD, *Individually and as Parent and Natural Guardian of C.G.*, | : | No. 3:13cv149 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| FIRSTENERGY CORP., | : | |
| Defendant | : | |

## **MEMORANDUM**

Before the court is Defendant FirstEnergy Corporation's motion to dismiss. (Doc. 7). The matter has been fully briefed and is ripe for disposition.

**BACKGROUND**

C.G. is a minor who lives with her mother, Plaintiff Connie Good (hereinafter "plaintiff") in Dingmans Ferry, Pennsylvania. (Doc. 1, Compl. (hereinafter "Compl.") ¶¶ 3-5).[1] On May 22, 2012, eleven (11) year old C.G. was playing with her nine (9) year old brother and a friend in the area of the Birchwood Lakes high voltage electrical substation ("Birchwood Lakes Substation"). (Id. ¶¶ 9-10). The children were familiar with the Birchwood Lakes Substation because it was located in an area between their homes and school bus stop. (Id. ¶ 11).

---

[1] The court will refer to this minor individual only by her initials. See Local Rule 5.2(d)(2); FEDERAL RULE OF CIVIL PROCEDURE 5.2.

While playing with her friend and brother on May 22, 2012, C.G. gained access to the Birchwood Lakes Substation by climbing over a chainlink fence. (Id. ¶¶ 12, 16).  Subsequent to climbing over the fence, C.G. caught on fire and sustained serious injuries when an arc of electricity ran through her body. (Id. ¶¶ 10, 13-14).  Specifically, C.G. received second and third degree electrical burns over forty-five percent (45%) of her body including her neck, chest, back and arms.  (Id. ¶ 21).

Plaintiff alleges that Defendant FirstEnergy Corporation ("FirstEnergy"), through one of its regulated distribution companies, Metropolitan Edison Company ("Met-Ed"), operated the Birchwood Lakes Substation.  (Id. ¶ 8). Additionally, plaintiff claims that the security fencing surrounding the substation failed to comply with the National Electric Safety Code ("NES Code"), which establishes the minimum requirements for electrical substation fencing.  (Id. ¶¶ 17, 19).  According to the NES Code, the security fencing must be made of woven steel fabric on steel posts with barbed wire on extension arms at least seven (7) feet tall.  (Id. ¶ 18).  Plaintiff avers the security fencing at issue was not seven (7) feet tall in all areas surrounding the substation.  (Id. ¶ 19).

On January 22, 2013, plaintiff filed a two-count complaint seeking over $75,000 in damages on each count.  (Id. ¶ 1).  Count I alleges FirstEnergy

was negligent in the installation, maintenance and inspection of the security fencing surrounding the Birchwood Lakes Substation. Count II claims the Birchwood Lakes Substation is an attractive nuisance. On April 1, 2013, FirstEnergy filed the instant motion to dismiss both counts. The parties then briefed the issues bringing the case to its present posture.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff is a citizen of Pennsylvania. (Compl. ¶¶ 3-4). Defendant FirstEnergy is incorporated under the laws of the State of Ohio with its principal place of business in Ohio. (Id. ¶ 6). Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over the case. See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"); 28 U.S.C. § 1441 (A defendant can generally remove a state court civil action to federal court if the federal court would have had original jurisdiction to address the matter pursuant to the diversity jurisdiction statute). As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000)

3

(citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of Review**

The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline

Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

5

The Supreme Court has counseled that a court examining a motion to dismiss should, "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681.

**Discussion**

FirstEnergy seeks to dismiss both counts of plaintiff's complaint arguing that plaintiff failed to state a claim upon which relief can be granted. FirstEnergy contends that both counts should be dismissed because FirstEnergy does not own, control, operate, inspect or perform any maintenance on the Birchwood Lakes Substation. We will address each count *in seriatim*.

**A. Negligence**

Under Pennsylvania law, the elements of negligence are: (1) the existence of a duty or obligation requiring a certain standard of conduct; (2) a failure to conform to that duty, or a breach thereof; (3) a causal connection between the breach and the harm; and, (4) actual loss or damage suffered. Atcovitz v. Gulph Mills Tennis Club, Inc., 812 A.2d 1218, 1222 (Pa. 2002).

In the present case, FirstEnergy only challenges the existence of a duty

in its motion to dismiss. FirstEnergy argues that it did not owe a duty to C.G. because FirstEnergy is merely the parent and holding company for Met-Ed. As the parent and holding company, FirstEnergy did not have any ownership or control over the Birchwood Lakes Substation. Plaintiff alleges that FirstEnergy owed a duty to C.G. because it supplied electricity to the Birchwood Lakes Substation.

Under Pennsylvania law, a duty of care exists for suppliers of electricity because of the nature of the risk imposed and the foreseeability of the harm incurred. See Estate of Zimmerman v. Se. Pa. Transp. Auth., 168 F.3d 680, 685 (3d Cir. 1999) (holding that a supplier of electricity owes a duty of care to all people in proximity to the wires through which the high-voltage electricity flows). In her complaint, plaintiff states that FirstEnergy provided electrical service through ten (10) regulated distribution companies, including Met-Ed. (Compl. ¶ 7). Plaintiff further alleges that Met-Ed operated the Birchwood Lakes Substation on behalf of FirstEnergy. (Id. ¶ 8). Thus, plaintiff properly plead that FirstEnergy owed a duty to C.G. because FirstEnergy supplied electricity to the Birchwood Lakes Substation.

FirstEnergy does not dispute that it supplied electricity to the Birchwood Lakes Substation. Rather, FirstEnergy claims that Met-Ed holds the title to the property upon which the Birchwood Lakes Substation resides.

7

In other words, Met-Ed is the liable party–not FirstEnergy.[2] The court finds FirstEnergy's argument unpersuasive.

The law in Pennsylvania states that "the duty to protect against known dangerous conditions falls upon the possessor of the land." Zimmerman, 168 F.3d at 684 (citations omitted). Title ownership is not determinative of whether a defendant is a possessor of land. Bloom v. Waste Mgmt., Inc., 615 F. Supp. 1002, 1015 (E.D. Pa. 1985) (citing Bagley v. Phila., 25 A.2d 579, 582 (Pa. 1942)). To determine whether an individual or entity is a possessor of land, courts in Pennsylvania look to Section 328E of the Restatement (Second) of Torts. Zimmerman, 168 F.3d at 648; Stanton v. Lackawanna Energy, Ltd., 886 A.2d 667, 677 (Pa. 2005).[3]

---

[2] FirstEnergy argues that Met-Ed "should be substituted as the named defendant." (Doc. 8, Def.'s Br. in Sup. Mot. to Dismiss at 3). Furthermore, FirstEnergy claims that plaintiff may "refile [her complaint against Met-Ed] in [s]tate court as required under the rules of Civil Procedure given that [Met-Ed] is a Pennsylvania based entity [and complete diversity of citizenship would no longer exist]." (Id. Ex. B, Def.'s letter dated Feb. 27, 2013).

[3] Restatement (Second) of Torts Section 328E defines a possessor of land as:

> (a) a person who is in occupation of the land with intent to control it; or
> 
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it; or

Here, plaintiff alleges that FirstEnergy occupied the land with the intent to control it through Met-Ed. Plaintiff argues that FirstEnergy's intent to control the land, and more generally Met-Ed's overall operations, is demonstrated through FirstEnergy's involvement in Met-Ed's daily affairs. Specifically, plaintiff claims that FirstEnergy has held itself out to be an active participant in the provision of electrical services through Met-Ed by actively reporting to and petitioning the Pennsylvania Utility Commission ("PUC") on Met-Ed's behalf.

For example, over the past three years, FirstEnergy has been intimately involved in directing and obtaining approval for Met-Ed's smart meter technology from the PUC.[4] Nowhere in its submissions with the PUC does FirstEnergy state that it is merely the parent and holding company of Met-Ed. At this stage in the litigation, plaintiff has sufficiently alleged that FirstEnergy occupied the land upon which the Birchwood Lakes Substation resides with the intent to control it through Met-Ed. See RESTATEMENT (SECOND) OF TORTS

---

> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

RESTATEMENT (SECOND) OF TORTS § 328E.

[4] See PENNSYLVANIA UTILITY COMMISSION, http://www.puc.pa.gov/about_puc/consolidated_case_view.aspx?Docket=M-2009-2123950 (last visited May 28, 2013).

§ 328E(a). Ergo, we will deny FirstEnergy's motion to dismiss plaintiff's negligence claim.

### B. Attractive Nuisance

Plaintiff also asserts a claim under the attractive nuisance doctrine, which holds possessors of land liable for damages caused by "Artificial Conditions Highly Dangerous to Trespassing Children." RESTATEMENT (SECOND) OF TORTS, § 339; see also Thompson v. Reading Co., 23 A.2d 729, 732-33 (Pa. 1942) (adopting § 339); Zimmerman, 168 F.3d at 648 (citations omitted) (holding that the duty to protect against known dangerous conditions falls upon the possessor of the land.).[5]  Section 339 sets forth five elements,

---

[5] Restatement (Second) of Torts Section 339 provides that:

> A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if:
>
> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
>
> (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
>
> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

all of which must be satisfied for a possessor of land to be liable.  Jesko v. Turk, 219 A.2d 591, 592 (Pa. 1966).

In the present case, FirstEnergy does not claim that plaintiff failed to satisfy the elements of Section 339.  (See Doc. 8, Def.'s Br. in Sup. Mot. to Dismiss at 5-7).  Rather, FirstEnergy contends that Met-Ed was the sole possessor of the land upon which the substation resided.  Because this argument mirrors FristEnergy's land possession argument above, the court's prior analysis is equally applicable here.  Therefore, we will deny defendant's motion to dismiss plaintiff's attractive nuisance claim.

**Conclusion**

For the stated reasons, defendant's motion to dismiss plaintiff's negligence and attractive nuisance claims will be denied.  An appropriate order follows.

---

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

RESTATEMENT (SECOND) OF TORTS § 339.

11

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONNIE GOOD, *Individually and as* | : | No. 3:13cv149 |
| *Parent and Natural Guardian of C.G.,* | : | |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| FIRSTENERGY CORP., | : | |
| Defendant | : | |

## ORDER

**AND NOW**, to wit, this 30th day of May 2013, Defendant FirstEnergy Corporation's motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 7) is **DENIED**.

                                            **BY THE COURT:**

                                            **s/ James M. Munley**
                                            **JUDGE JAMES M. MUNLEY**
                                            **United States District Court**