## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CONNIE GOOD,** *Individually and as* | : | No. 3:13cv149 |
| *Parent and Natural Guardian of C.G.,* | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **FIRSTENERGY CORP.,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### <u>MEMORANDUM</u>

This state law negligence case involves injuries Plaintiff Connie Good's (hereinafter "plaintiff") daughter, C.G., sustained after gaining access to the Birchwood Lakes high voltage electrical substation.[1]  Plaintiff asserts Defendant FirstEnergy Corp.'s (hereinafter "FirstEnergy Corp.") negligence caused her injuries.  Before the court for disposition is FirstEnergy Corp.'s motion for summary judgment.  For the reasons that follow, the court will deny this motion.

**Background**

On May 22, 2012, eleven (11) year old C.G. played with her nine (9) year old brother and a friend near the Birchwood Lakes high voltage electrical

---

[1] The court will refer to this minor individual only by her initials.  <u>See</u> Local Rule 5.2(d)(2); FEDERAL RULE OF CIVIL PROCEDURE 5.2.

substation (hereinafter "the substation").  (Doc. 78-5, Dep. of C.G. II.

(hereinafter "C.G. Dep. II") at 1-3).[2]  The children were familiar with the

substation because they walked past it on their way to and from their school

bus stop everyday.  (Doc. 77-2, Def.'s Concise Stmt. of Facts (hereinafter

"SOF") ¶¶ 16-17).

   While playing with her friend and brother on May 22, 2012, C.G. climbed

to the top of the substation's front gate, pulled down the barbed wire, and

jumped into the interior of the substation.  (Id. ¶ 27).  Once inside the

substation, C.G. climbed eight feet up an A-frame structure, which had an

energized power line traversing through its center.  (Id. ¶ 28).  Shortly

thereafter, C.G. jumped down off the A-frame structure.  (Id.)  While jumping

down, C.G. made contact with the energized power line.  (Id.)  C.G.'s contact

with the power line caused her to catch on fire, resulting in serious injuries.

(Id. ¶ 29; Doc. 79-2, Ex. F, Carol Good Dep. I at 100; Doc. 79-3, Ex. F, Carol

Good Dep. II. at 110).  Specifically, C.G. received second and third degree

electrical burns over 40.5% of her body including her neck, chest, back and

arms, which caused her treating physicians to place her in a medically induced

---

   [2]  All deposition citation page numbers refer to the electronic case file
page number located in the upper right-hand corner of the electronically filed
document.

coma for seven (7) weeks. (Doc. 79-2, Ex. F, Carol Good Dep. I at 100; Doc. 79-3, Ex. F, Carol Good Dep. II. at 110). The parties dispute how C.G. received her injuries.

On January 22, 2013, plaintiff filed a two-count complaint seeking over $75,000 in damages on each count. (Doc. 1, Compl.). Count I alleges FirstEnergy Corp. negligently installed, maintained and inspected the security fencing surrounding the substation. (Id. ¶¶ 15-25). Count II claims the substation is an attractive nuisance. (Id. ¶¶ 26-39). After discovery, FirstEnergy Corp. moved for summary judgment. (Doc. 77). The parties have briefed their respective positions and the matter is ripe for disposition.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff is a citizen of Pennsylvania. (Doc. 1, Compl. ¶¶ 3-4). FirstEnergy Corp. is incorporated under the laws of the State of Ohio with its principal place of business in Ohio. (Id. ¶ 6). Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over the case. See 28 U.S.C. § 1332 ("[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is between . . . citizens of different States[.]").  As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a

4

reasonable jury could not return a verdict for the non-moving party.  <u>Anderson</u>, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  <u>Id.</u>  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial.  <u>Id.</u> at 324.

**Discussion**

FirstEnergy Corp. moves for summary judgment on plaintiff's negligence and punitive damages claims.  Plaintiff counters that she can state a *prima facie* negligence cause of action and genuine issues of material fact preclude summary judgment on punitive damages.  The court will address these issues in order, beginning with plaintiff's negligence claim.

5

## I. Negligence

Plaintiff contends FirstEnergy Corp.'s negligence caused C.G.'s injuries. In Pennsylvania, the elements necessary to plead a negligence action are: (1) the existence of a duty or obligation requiring a certain standard of conduct; (2) a failure to conform to that duty, or a breach thereof; (3) a causal connection between the breach and the harm; and (4) actual loss or damage suffered. Cavanagh v. Electrolux Home Prods., 904 F. Supp. 2d 426, 429 (E.D. Pa. 2012) (citing Atcovitz v. Gulph Mills Tennis Club, Inc., 812 A.2d 1218, 1222 (Pa. 2002)).

FirstEnergy Corp. raises the following three issues pertaining to plaintiff's negligence claim: 1) Is FirstEnergy Corp. entitled to summary judgment because it owed C.G. no duty?  2) Does C.G.'s trespass into the substations excuse any duty FirstEnergy Corp. owed to C.G.?  3) Should judgment be granted to FirstEnergy Corp. because any alleged negligence did not cause C.G.'s injuries?  The court will address these issues *in seriatim*.

### A. Did FirstEnergy Corp. owe a duty to C.G.?

Initially, FirstEnergy Corp. challenges the existence of a duty. Pennsylvania law defines a legal duty in negligence cases as "an obligation, to which the law will give recognition and effect, to conform to a particular

6

standard of conduct toward another." Atcovitz, 812 A.2d at 1222. In
Pennsylvania, a supplier of electricity **or** the possessor of a land site owes a
duty of care to an entrant on land with high-voltage electrical transmission
lines. Stark v. Lehigh Foundries, Inc., 130 A.2d 123, 128-31 (Pa. 1957);
Yoffee v. P.P.&L., 123 A.2d 636, 645 (Pa. 1956); Bailey v. Pa. Elec. Co., 598
A.2d 41, 47 (Pa. Super. Ct. 1991); see also Estate of Zimmerman v. SEPTA,
168 F.3d 680, 685 (3d Cir. 1999) (noting that in Pennsylvania, a supplier of
electricity owes a duty of care to all people in proximity to the wires through
which the high-voltage electricity flows). Thus, Pennsylvania law provides that
FirstEnergy Corp. owes C.G. a legal duty if it supplied electricity to the
substation. Likewise, FirstEnergy Corp. owes C.G. a legal duty if it possessed,
owned and operated the substation.

FirstEnergy Corp. argues that it owed no duty to plaintiff for two reasons:
(1) FirstEnergy Corp. did not supply electricity to the substation; and (2)
FirstEnergy Corp. did not possess, own and operate the substation. Plaintiff
counters that FirstEnergy Corp. may owe a duty to plaintiff as the supplier of
electricity to the substation or possessor of a land site with high-voltage
electrical transmission lines and genuine issues of material fact require a jury
to determine these issues. After careful consideration, the court agrees with

plaintiff.

### 1. Supplier of Electricity[3]

FirstEnergy Corp. argues that no evidence exists establishing that it generates, transmits or distributes electricity to anyone.  FirstEnergy Corp.'s corporate designee testified that FirstEnergy Corp. formed in 1996 and holds all the stock of its subsidiaries, including Met-Ed.  (Doc. 92, Ex. A, Dep. of John Marconi (hereinafter "Marconi Dep.") at 20-22).  FirstEnergy Corp. does not have any employees.  (Id.)  Additionally, FirstEnergy Service Company, not

--------------------

[3]  In the court's motion to dismiss memorandum, we determined that FirstEnergy Corp. failed to contest plaintiff's allegation that it supplied electricity to the substation.  Good v. FirstEnergy Corp., No. 3:13-cv-149, 2013 WL 2371700, at *3 (M.D. Pa. May 30, 2013).  At oral argument for this summary judgment motion, FirstEnergy Corp. vehemently refuted this determination and directed the court to paragraph seven (7) of its answer, which specifically denied that it supplied electricity to the substation.  (Doc. 98, Oral Argument dated 9/16/15 at 6-7, 10).

A review of the docket, however, establishes that FirstEnergy Corp. filed its answer on June 12, 2013 (Doc. 14)–thirteen (13) days **after** the court issued the memorandum and order denying FirstEnergy Corp.'s motion to dismiss (Doc. 13).  Furthermore, a review of FirstEnergy Corp.'s motion to dismiss and supporting brief unequivocally establishes that it never addressed plaintiff's allegation that FirstEnergy Corp. supplied electricity to the substation.  (Docs 7 and 8).  Therefore, contrary to FirstEnergy Corp.'s strenuous assertions at oral argument for this summary judgment motion, it did not contest the issue of supplying electricity to the substation until **thirteen (13) days after** the court's motion to dismiss memorandum.

Regardless of its position at the motion to dismiss stage, FirstEnergy Corp. presently disputes that it supplied electricity to the substation.  As such, the court will determine whether a genuine issue of material fact precludes summary judgment on this issue.

FirstEnergy Corp., provides FirstEnergy Corp. subsidiaries with legal, account and engineering services.  (Id. at 20-23).  FirstEnergy Service Company, not FirstEnergy Corp., represents FirstEnergy Corp. subsidiaries before the Pennsylvania Utility Commission.  (Id. at 22).  Finally, FirstEnergy Solutions Corp., not FirstEnergy Corp., is a wholesale marketer of electricity.  (Id. at 24). Accordingly, the burden shifts to plaintiff, who must go beyond her pleadings, and designate specific facts demonstrating the existence of a genuine issue for trial.  Celotex, 477 U.S. at 324.

Here, plaintiff argues FirstEnergy Corp.'s 2013 annual report stands in direct contrast to FirstEnergy Corp.'s assertion that it does nothing.[4] FirstEnergy Corp.'s annual report states "**FirstEnergy is a leading regional energy provider headquartered in Akron, Ohio**.  Our subsidiaries and affiliates are involved in the generation, transmission and distribution of electricity as well as energy management and other energy related services." (Doc. 95-1, Ex. A, FirstEnergy Corp.'s 2013 Annual Report at 10) (emphasis

---

[4] FirstEnergy Corp.'s 2013 annual report lists FirstEnergy Corp.'s financial statements for the years 2011-2013, including 2012–the year C.G.'s injury occurred.  (Doc. 95-1, Ex. A, FirstEnergy Corp.'s 2013 Annual Report at 84-88).  At oral argument, FirstEnergy Corp. objected to the court considering its 2013 annual report.  (Doc. 98, Oral Argument dated 9/16/15 at 10-11, 32). The court, however, will overrule FirstEnergy Corp.'s objection and consider this exhibit in the interest of justice.

added).[5]  The annual report also states that "[o]ur 10 utility operating companies form one of the nation's largest investor-owned electric systems based on 6 million customers served within a nearly 65,000-square-mile area of Ohio, Pennsylvania, New Jersey, West Virginia, Maryland and New York." (Id.)  Therefore, FirstEnergy Corp. holds itself out to the general public as a supplier of electricity.

In response, FirstEnergy Corp. implicitly asks the court to weigh the probative value of plaintiff's competent evidence–the 2013 Annual Report. Specifically, FirstEnergy Corp. argues that its annual report is just that–a report painting the overall picture of FirstEnergy Corp.'s financial health and the financial health of its wholly-owned subsidiaries.  (Doc. 98, Oral Argument dated 9/16/15 at 11-12).

The court, however, cannot, and indeed must not, weigh the evidence and reach factual inferences contrary to plaintiff's competent evidence. Rather, at the summary judgment stage, reasonable inferences must be drawn in favor of the nonmoving party.  Int'l Raw Materials, Ltd. 898 F.2d at 949. Thus, viewing the annual report in the light most favorable to plaintiff, genuine issues of material fact exist regarding whether FirstEnergy Corp. is merely a

---

[5]  FirstEnergy Corp.'s annual report defines "FirstEnergy" as "FirstEnergy Corp., together with its consolidated subsidiaries."  (Id. at 13).

holding company or a supplier of electricity to the substation.  See Link v. FirstEnergy Corp., 25 N.E.3d 1095, 1100 (Ohio Ct. App. 2014) (allowing the issue of whether or not FirstEnergy Corp. is merely a holding company to proceed to trial).

### 2. Did FirstEnergy Corp. possess and control the substation?

FirstEnergy Corp. next contends that the court should grant summary judgment on plaintiff's assertion that it possessed and controlled the substation.  Specifically, FirstEnergy Corp. argues that its wholly-owned subsidiary, Met-Ed, possessed and controlled the substation.[6]  Plaintiff claims FirstEnergy Corp. occupied the land with the intent to control it through Met-Ed, allowing plaintiff to pierce the corporate veil to prevent injustice.

Pennsylvania provides a strong presumption against piercing the corporate veil.  Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa. 1995) (citing Wedner v. Unemp't Bd., 296 A.2d 792, 794 (Pa. 1972)).  Pursuant to

---

[6]  Pennsylvania law provides that "the duty to protect against known dangerous conditions falls upon the possessor of the land."  Zimmerman, 168 F.3d at 684 (citations omitted).  Title ownership is not determinative of whether a defendant possesses land.  Bloom v. Waste Mgmt., Inc., 615 F. Supp. 1002, 1015 (E.D. Pa. 1985) (citing Bagley v. Phila., 25 A.2d 579, 582 (Pa. 1942)).  Rather, courts in Pennsylvania look to Section 328E of the Restatement (Second) of Torts, which defines a possessor of land as "a person who is in occupation of the land with intent to control it."  RESTATEMENT (SECOND) OF TORTS § 328E(a).

Pennsylvania law, "a corporation . . . is normally regarded as a legal entity separate and distinct from its shareholders." Ashley v. Ashley, 393 A.2d 637, 641 (Pa. 1978); see also Advanced Tele. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC, 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004) (stating that "the general rule is that a corporation shall be regarded as an independent entity even if its stock is owned by one person"); Coll. Watercolor Grp., Inc. v. H. Newbauer, Inc., 360 A.2d 200, 207 (Pa. 1976) (noting that a corporation with a single shareholder can be an independent entity).

"Nevertheless, 'a court will not hesitate to treat as identical the corporation and the individuals owning all its stocks and assets whenever justice and public policy demand and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless.'" Advanced Tele. Sys., Inc, 846 A.2d at 1278 (quoting Good v. Holstein, 787 A.2d 426, 430 (Pa. Super Ct. 2001)); see also Zubik v. Zubik, 384 F.2d 267, 272 (3d Cir. 1967) (stating that "the appropriate occasion for disregarding the corporate existence occurs when the court must prevent fraud, illegality, or injustice or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime").

FirstEnergy Corp. argues summary judgment is appropriate on this issue

for four (4) reasons.  First, the record unequivocally establishes FirstEnergy

Corp. holds all of Met-Ed's stock and is a separate legal entity from Met-Ed.

(Marconi Dep. at 20-22).  Second, Met-Ed, not FirstEnergy Corp., owns the

substation property.  (SOF ¶¶ 3, 5).  Third, FirstEnergy Corp. never inspected

the substation.  Rather, David Anschau, a Met-Ed employee, inspected the

substation on a monthly basis over the past eleven (11) years.  (Doc. 80, Ex.

K, Dep. of David Anschau I (hereinafter "Anschau Dep. I") at 13-15, 19, 64-66;

Doc. 80-4, Ex. M, Dep. of Wayne Fatebene (hereinafter "Fatebene Dep.") at

28-30).  Finally, FirstEnergy Corp. argues the Pennsylvania Superior Court has

already addressed this issue and determined that a parent and holding

company of an electrical utility cannot be deemed a possessor and occupier of

a power plant site.  See Rudy v. A-Best Prods. Co., 870 A.2d 330, 334 n.4

(Pa. Super. Ct. 2005) (finding that a parent and holding company of an electric

utility failed to possess and control the power plant site).

Plaintiff counters that genuine issues of material fact preclude summary

judgment on this issue.  As previously stated, plaintiff argues that FirstEnergy

Corp. is more than a hands-off parent and holding company.  Rather,

FirstEnergy Corp. is a leading regional energy provider that owns, possesses

and controls electrical infrastructure–including the substation.  (Doc. 95-1, Ex.

13

A, FirstEnergy Corp.'s 2013 Annual Report at 10).  FirstEnergy Corp. also

provides electrical services to six (6) million customers within a nearly 65,000-

square-mile area of Ohio, Pennsylvania, New Jersey, West Virginia, Maryland

and New York.  (Id.)

Moreover, in Rudy, the plaintiff failed to present any competent evidence

that the parent and holding company possessed and controlled the land site

with high-voltage electrical transmission lines on it.  Rudy, 870 A.2d at 334 n.4.

Here, plaintiff argues FirstEnergy Corp.'s annual report establishes that

FirstEnergy Corp. owns, possesses and controls electrical

infrastructure–including the substation.  Rudy, therefore, is distinguishable

from the instant case.  Ergo, viewing the evidence in the light most favorable to

plaintiff, FirstEnergy Corp.'s motion for summary judgment arguing that it did

not possess and control the substation will be denied.

## B.  What duty did FirstEnergy Corp. owe to C.G.?

Having concluded FirstEnergy Corp. may owe a duty to plaintiff as the

supplier of electricity to the substation or possessor of a land site with

high-voltage electrical transmission lines, the court must establish the extent of

that duty.  Initially, FirstEnergy Corp. argues that it owed plaintiff no duty

14

because she trespassed into the substation property.[7]  Plaintiff counters that,

even if she trespassed into the substation, FirstEnergy Corp. still owed her a

duty to avoid willful and wanton injury.  Additionally, plaintiff contends that

Pennsylvania's attractive nuisance doctrine excuses her trespass into the

substation, and therefore, FirstEnergy Corp. owed her a heightened duty of

care.  The court will address in turn the issues of what, if any, duty suppliers of

electricity and possessors of land owe trespassers and whether

Pennsylvania's attractive nuisance doctrine excuses C.G.'s trespass.

### 1.  Trespasser duty of care

Generally, the supplier of electricity **or** the possessor of a land site owes

a heightened, rather than an ordinary, degree of care to an entrant on land

with high-voltage electrical transmission lines.  Stark, 130 A.2d at 128-31;

Yoffee, 123 A.2d at 645; Bailey, 598 A.2d at 47.  Pennsylvania law provides

that:

> [T]he standard of care imposed upon a supplier of electric
> power, particularly when the power is supplied at high voltage,
> is among the highest recognized in the law of negligence.  A
> supplier of electric current is bound not only to know the extent
> of the danger, but to use the very highest degree of care

---

[7]  "A trespasser [is] 'a person who enters or remains upon land in the
possession of another without a privilege to do so created by the possessor's
consent or otherwise.'"  Rossino v. Kovacs, 718 A.2d 755, 756-57 (Pa. 1998)
(quoting RESTATEMENT (SECOND) OF TORTS § 329).

> practical to avoid injury to everyone who may be lawfully in proximity to its wires, and liable to come accidentally or otherwise in contact with them. . . . That a transmission line is a dangerous instrumentality is recognized everywhere. No matter where located it is a source of grave peril and the law requires that the possessor of such an instrumentality exercise a high degree of care.

Birt v. FirstEnergy Corp., 891 A.2d 1281, 1286 (Pa. Super. Ct. 2006) (quoting Colloi v. Phila. Elec. Co., 481 A.2d 616, 620 (Pa. Super. Ct. 1984)) (internal citations and quotation marks omitted).

This heightened duty of care, however, "extends only to those **lawfully** in proximity to the wires. The standard of care owed to trespassers by suppliers of electricity is a duty **to avoid wilful and wanton injury**." Estate of Zimmerman, 168 F.3d 680, 687 (3d Cir. 1999) (quoting Heller v. Consol. Rail Corp., 576 F. Supp. 6 at 12 n.7 (E.D. Pa. 1982)) (emphasis added) (citation omitted); see also Dunnaway v. Duquesne Light Co., 423 F.2d 66, 69 n.2 (3d Cir. 1970) ("Under Pennsylvania law an electric company as the supplier of a dangerous agent is under a duty to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires." (internal quotations omitted)); Graham v. Sky Haven Coal, Inc., 563 A.2d 891, 897 n.8 (Pa. Super. Ct. 1989) (noting Commonwealth's long-recognized rule limiting landowner's duty to trespasser to refraining from wanton or willful misconduct).

16

"This rule comports with the notion that trespassers be given some, however modest, protection against tortfeasors." <u>Zimmerman</u>, 168 F.3d at 685 (citing <u>Barre v. Reading City Passenger Ry. Co.</u>, 26 A. 99, 100 (Pa. 1893) ("Even trespassers are entitled to humane consideration.")). As such, Pennsylvania law clearly establishes that, contrary to FirstEnergy Corp.'s arguments, it owes plaintiff a duty to avoid wanton or willful misconduct **even if** plaintiff trespassed into the substation.

### 2. Duty of care under attractive nuisance

Plaintiff next argues Pennsylvania's attractive nuisance doctrine excuses her trespass into the substation, allowing the court to impose a heightened duty of care on FirstEnergy Corp. Pennsylvania law provides that possessors of land are liable for damages caused by "Artificial Conditions Highly Dangerous to Trespassing Children." RESTATEMENT (SECOND) OF TORTS, § 339 (hereinafter "section 339"); <u>see</u> <u>also</u> <u>Bartleson v. Glen Alden Coal Co</u>., 64 A.2d 846 (Pa. 1949) (adopting section 339); <u>Zimmerman</u>, 168 F.3d at 684 (citations omitted) (holding that the duty to protect against known dangerous conditions falls upon the possessor of the land.). Section 339 sets forth five elements, all of which must be satisfied for a possessor of land to be liable. <u>Jesko v. Turk</u>, 219 A.2d 591, 592 (Pa. 1966).

17

Section 339 provides that:

> A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if:
>
> > (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
> >
> > (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
> >
> > (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
> >
> > (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
> >
> > (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

RESTATEMENT (SECOND) OF TORTS § 339.   Here, the parties do not dispute the

substation is an artificial condition.  Rather, the parties dispute specific

attractive nuisance elements–namely the first and third elements.[8]  The court

---

[8]  FirstEnergy Corp. contends plaintiff cannot satisfy any of the five (5) elements necessary to establish an attractive nuisance claim.  (Doc. 92, Def. Reply at 8).  FirstEnergy Corp.'s briefs, however, only provide argument pertaining to elements (a) and (c).  (Doc. 77-4, Def. Br. in Supp. Mot. for Summ. J. at 16-23; Doc. 92, Def. Reply at 8-11).  Thus, the court will only address these two elements.

will address in turn the first and third attractive nuisance elements.

### i. Notice to FirstEnergy Corp.

FirstEnergy Corp. argues that plaintiff cannot satisfy the first attractive nuisance element.  Specifically, FirstEnergy Corp. had no notice that children had or were likely to trespass into the substation.  Plaintiff asserts genuine issues of material fact preclude summary judgment on this issue.  After a careful review, the court agrees with the plaintiff.

Pennsylvania law provides that a possessor of land is liable for physical harm to trespassing children caused by an artificial condition if "the place where the condition exists is one which the possessor knows or has reason to know that children are likely to trespass."  RESTATEMENT (SECOND) OF TORTS, § 339(a).

FirstEnergy Corp. asserts all deposition testimony of FirstEnergy Corp. and Met-Ed employees establishes that neither FirstEnergy Corp. nor Met-Ed had any notice of individuals accessing, or attempting to access, the substation since the time of its construction in 1970-71 through the date of C.G.'s accident on May 22, 2012.  (Anschau Dep. I at 70-71, 76; Fatebene Dep. at 65-66).  Moreover, FirstEnergy Corp. contends no law enforcement agency, government employee or neighborhood parent ever filed a complaint

to FirstEnergy Corp. or Met-Ed pertaining to children trespassing at the substation.  Accordingly, the burden shifts to plaintiff, who must go beyond her pleadings, and designate specific facts within affidavits, depositions, admissions, or answers to interrogatories demonstrating the existence of a genuine issue for trial.  Celotex, 477 U.S. at 324.

Here, plaintiff goes beyond her pleadings and designates several disputed material facts pertaining to whether FirstEnergy Corp. knew or had reason to know that children are likely to trespass at the substation.  Initially, C.G.'s brother, Danny Good, testified that he entered the substation five (5) times in the two months prior to his sister's injury in May 2012.  (Doc. 79, Ex. E, Dep. of Daniel Good (hereinafter "Daniel Good Dep.") at 25-35).  Each time, Danny took the following steps: (1) He walked to the front gate; (2) climbed to the top of the gate; (3) unhooked the top and middle strands of barbed wire from the gate post; (4) stepped on top of the loosened barbed wire and (5) climbed down the other side of the gate.  (Id. at 27-31).  Thus, Danny's testimony establishes that he moved the barbed wire from where it belonged.[9] Viewing this testimony in the light most favorable to plaintiff, a reasonable juror

---

[9]  At Danny Good's deposition, FirstEnergy Corp. failed to ask Danny if placed the top two strands of barbed wire back into their support hooks upon exiting the substation.

could conclude that Danny Good visibly altered the position of the barbed wire above the front gate.

Danny Good's testimony may contradict the inspector's testimony and his inspection reports.  Specifically, the March and April 2012 substation inspections assert the barbed wire was "OK" and failed to mention whether the top two strands of barbed wire above the front gate were removed from their hooks or visible altered.  (Doc. 80-2, March and April 2012 substation inspections at 19-20).  Moreover, the substation inspector, David Anschau, testified that, every month, he looked at the barbed wire to make sure that it was tight.   (Anschau Dep. I at 58-59).  Mr. Anschau, however, never recalled noticing unhooked or visibly altered barbed wire during any of his inspections at the substation, including March and April 2012.  (Id. at 59).

Plaintiff also submits the deposition testimony of Corbin Farrell (hereinafter "Farrell").  Farrell moved into the Birchwood Lake community in 2001, when he was five (5) or (6) years old.  (Doc. 87-4, Dep. of Corbin Farrell at 11).  Farrell, along with other kids living in the Birchwood area, created a path through the woods to their bus stop–a path that still exists today.  (Id. at 11-12).  The path traversed next to the substation.  (Id. at 11-12, 15, 25-26).  Farrell testified that he gained access to the substation on three (3) or (4)

21

occasions, the last of which occurred ten (10) or more years prior to C.G. and her brother gaining access to the substation.  (Id. at 12-13, 22).  Farrell stated that he left a basketball or soccer ball inside the substation and upon returning to retrieve it, learned that the ball had been removed.  (Id. at 16-17).

Viewing Danny Good and Corbin Farrell's testimony in the light most favorable to plaintiff, a genuine issue of material fact exists regarding whether FirstEnergy Corp. knew or had reason to know that children were likely to trespass at the substation.

### ii. Children do not discover the condition or realize the risk involved

FirstEnergy Corp. also argues that plaintiff cannot establish the third attractive nuisance element, requiring a plaintiff to demonstrate that "the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it."  RESTATEMENT (SECOND) OF TORTS, § 339(c).

FirstEnergy Corp. contends the undisputed record establishes that, at the time of the accident, C.G. knew: (1) the meaning of the words "dangerous", "keep out" and "trespass"; (2) that electricity could be dangerous; and (3) that "Danger" signs were posted on the exterior of the perimeter fence surrounding the substation.  (Doc. 78-4, Ex. C, Dep. of C.G. (hereinafter "C.G. Dep. I") at

14-16, 57).  This pre-accident knowledge, according to FirstEnergy Corp.,

eliminates, as a matter of law, any possible doubt the court may have

regarding whether or not C.G. appreciated the risk of trespassing inside the

substation.

Plaintiff, interprets the same evidence differently.  Plaintiff acknowledges

C.G. knew the meanings of the words "dangerous," "keep out," and "trespass."

(Id.)  Plaintiff, however, did not subjectively understand how these words

applied to the substation.  Specifically, plaintiff argues that C.G. did not

discover or realize the risks involved in intermeddling with the substation

because she entered the substation twice in May 2012 before suffering her

injuries on May 22, 2012.  (C.G. Dep. I. at 64, 66-68, 78, 83, 92-93).  The first

time, C.G. played inside the substation for ten to fifteen minutes before

climbing out.  (Id. at 79).  The second time, C.G. played inside the substation

for over two hours.  (Id. at 93-95).  While inside the substation the second

time, C.G. touched various poles without sustaining injury.  (Id. at 95-97).  C.G.

also testified that the substation was their "little hang-out place."  (Id. at 66, 68,

77-78; C.G. Dep. II at 1).

Moreover, C.G. stated that she knew wires went into the substation.

(C.G. Dep. I at 81).  C.G., however, did not know those lines carried electricity.

(Id.)  Rather, C.G. believed the electricity "just souped or whatever past and, like, just powered everything."  (Id.)  Stated differently, the fact that C.G. played inside the substation for over two hours without incident days before being injured may illustrate her belief that, despite the signage in the area, the substation was not dangerous.   Viewing the evidence in plaintiff's favor, a jury could conclude that C.G. did not discover or realize the risks involved in intermeddling with the substation.

Accordingly, genuine issues of material fact exist regarding whether FirstEnergy Corp. had notice children were likely to trespass at the substation. Similarly, genuine issues of material fact exist pertaining to whether C.G., because of her youth, did not discover the condition or realize the risk involved in intermeddling with the substation.  Therefore, the court will deny FirstEnergy Corp.'s motion for summary judgment on the attractive nuisance issue.

### C.  Did FirstEnergy Corp.'s negligence cause C.G.'s injuries?

Next, FirstEnergy Corp. argues that summary judgment should be granted as to all of plaintiff's claims because plaintiff has failed to present any facts demonstrating that its purported negligence caused plaintiff's injuries. Plaintiff argues that genuine issues of material fact preclude summary judgment on causation.  Specifically, plaintiff avers FirstEnergy Corp.'s failure

to adequately install, maintain and inspect the substation's enclosure created an unreasonably dangerous condition which resulted in C.G. burning 40.5% of her body.  After a careful review, the court agrees with the plaintiff and finds that causation is a question of fact for the jury to determine.

In Pennsylvania, claims of negligence, whether brought as strict liability, breach of warranty, or traditional negligence actions, require a demonstration that defendant's conduct was the proximate cause of plaintiff's injuries before liability can attach.  See, e.g., Steamfitters Union No. 420 Welfare Fund v. Philip Morris, 171 F.3d 912, 939 n.23 (3d Cir. 1999); Skipworth v. Lead Indus. Ass'n, 547 Pa. 224, 690 A.2d 169, 172 (Pa.1997) (holding that "Pennsylvania . . . follows the general rule that a plaintiff, in order to recover, must establish that a particular defendant's negligence was the proximate cause of her injuries.").  "In order for negligent conduct to be a proximate cause of an injury it must be a substantial factual cause of the injury for which damages are sought."  Pascal v. Carter, 647 A.2d 231, 233 (Pa. Super. Ct.1994).  "The defendant's negligent conduct may not, however, be found to be a substantial cause where the plaintiff's injury would have been sustained even in the absence of the actor's negligence."  Id.

In the instant matter, plaintiff's expert determined FirstEnergy Corp.

25

failed to adequately maintain the enclosure surrounding the substation.  (Doc. 87-6, Pl. Expert Report at 9).  Plaintiff's expert stated that sections of the enclosure were not within the height requirement and the barbed wire was not adequately installed or maintained.  (Id.)  Thus, the expert concluded that FirstEnergy Corp.'s failure to adequately install, maintain and inspect the substation's enclosure created an unreasonably dangerous condition causing C.G.'s injury on Tuesday May 22, 2012.  (Id.)

FirstEnergy Corp. argues that C.G.'s own actions caused her injuries. Specifically, C.G. climbed into the substation.  C.G. scaled an eight-foot steel I-beam "and then reached over, or leapt, to purposely touch/grasp an energized power line" causing her injuries.  (SOF ¶ 28).  FirstEnergy Corp.'s argument is unconvincing for three reasons.

First, plaintiff disputes that she reached out or jumped to purposely catch an energized power line.  (Doc. 88, Pl. Resp. Def.'s SOF ¶ 28).  Second, the record fails to unequivocally establish that C.G. was aware of the high voltage carried through the power lines.  Third, the Pennsylvania Supreme Court has stated that it is common knowledge that children will accept an invitation to climb.  Bartleson v. Glen Alden Coal Co., 64 A.2d 846, 851 (Pa. 1949). Therefore, FirstEnergy Corp.'s argument that C.G. caused her injuries

because she climbed the A-frame structure is potentially unfounded.

In short, the jury must resolve these disputed issues of material fact.
See Stark, 130 A.2d at 130 (stressing that "the question of what is proximate
cause of an accident is almost always one of fact for the jury"); Yoffee, 123
A.2d at 642 (reiterating Pennsylvania's long-standing principle that issues of a
factual nature that are in dispute must be resolved by a jury).  As such, the
court will deny FirstEnergy Corp.'s motion for summary judgment pertaining to
causation.

## II. Punitive Damages

Finally, FirstEnergy Corp. moves for summary judgment on plaintiff's
claim for punitive damages.[10]  "The Pennsylvania Supreme Court has held that
punitive damages may be awarded in negligence cases if the plaintiff proves
greater culpability than ordinary negligence at trial." Brand Mktg. Grp., LLC v.
Intertek Testing Servs., N.A., Inc., —F.3d—, 2015 WL 5255078, at *9 (3d Cir.
Sept. 10, 2015) (citing Hutchinson ex rel. Hutchinson v. Luddy, 870 A.2d 766,
(Pa. 2005)).  In Hutchinson, the Pennsylvania Supreme Court explained
punitive damages as follows:

---

[10]  As a general matter, because the court is sitting in diversity, the
substantive law of Pennsylvania, including the law regarding punitive
damages, applies to the instant case.  Chamberlain, 210 F.3d at 158 (3d Cir.
2000) (citing Erie R.R., 304 U.S. at 78 (1938)).

> The standard governing the award of punitive damages in Pennsylvania is settled.  Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.  As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.

870 A.2d at 766 (internal citations omitted).  "The state of mind of the actor is vital" in determining whether punitive damages may be awarded.  Feld v. Merriam, 485 A.2d 742, 748 (Pa. 1984).  "Ordinary negligence . . . will not support an award of punitive damages.  Rather, to justify an award of punitive damages, the fact-finder must determine that the defendant acted with a culpable state of mind, i.e., with evil motive or reckless indifference to the rights of others."  Hutchinson v. Penske Truck Leasing Co., 876 A.2d 978, 983-84 (Pa. Super. Ct. 2005) (citation omitted).

In the instant matter, plaintiff does not contend that FirstEnergy Corp. acted with evil motive.  Accordingly, the question is whether, viewing the evidence in plaintiff's favor, no genuine issue of material fact exists establishing FirstEnergy Corp. acted with reckless indifference.

The Third Circuit Court of Appeals has noted that it "takes a special type of recklessness to justify punitive damages in Pennsylvania."  Brand Mktg. Grp., LLC, 2015 WL 5255078, at *10.  "[A] punitive damages claim must be

supported by evidence sufficient to establish that (1) a defendant had a

subjective appreciation of the risk of harm to which the plaintiff was exposed

and that (2) he acted, or failed to act, as the case may be, in conscious

disregard of that risk."  Hutchison, 870 A.2d at 772.  That "conscious

disregard" is critical: "[A]n appreciation of the risk is a necessary element of

the mental state required for the imposition of [punitive] damages."  Martin v.

Johns-Manville Corp., 494 A.2d 1088, 1097 n.12 (Pa. 1985), abrogated on

other grounds by Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800 (Pa.

1989).

FirstEnergy Corp. argues that plaintiff cannot demonstrate that it acted

recklessly indifferent to plaintiff's well-being.  Specifically, David Anschau's

actions, as substation inspector, establish that he meticulously inspected the

substation, including the height of the fence and barbed wire monthly over the

past eleven (11) years.  (Anschau Dep. I at 58-61, 70-71).  Plaintiff counters

that David Anschau's inspections establish that he consciously disregarded

the grave dangers associated with inspecting a high voltage electrical

substation.

Specifically, Mr. Anschau failed to ensure the fencing surrounding the

substation was in a reasonably safe condition.  (Id. at 58-61, 69-71).  Mr.

Anschau also failed to verify the barbed wire was properly attached at the appropriate height above the fencing.  (Id.)  Based on this evidence, a jury could conclude that Mr. Anschau acted with reckless indifference and impose punitive damages.  Ergo, it is inappropriate to grant summary judgment to FirstEnergy Corp. on this issue.

**Conclusion**

Based upon the above reasoning, FirstEnergy Corp.'s motion for summary judgment will be denied.  FirstEnergy Corp. may owe a duty to plaintiff as the supplier of electricity to the substation or possessor of a land site with high-voltage electrical transmission lines.  The extent of FirstEnergy Corp.'s duty varies with C.G.'s status on the substation property.  If a jury determines C.G. trespassed, FirstEnergy Corp. owed C.G. a duty to avoid wanton or willful misconduct.  If a jury concludes Pennsylvania's attractive nuisance doctrine excuses C.G.'s trespass, FirstEnergy Corp. owed C.G. the same heightened duty of care that Pennsylvania law imposes on suppliers of electricity or possessors of a land site with high-voltage transmission lines.

Regarding the attractive nuisance issue, the court determines that genuine issues of material fact exist pertaining to whether FirstEnergy Corp. had notice children were likely to trespass at the substation.  Similarly, genuine

issues of material fact exist regarding whether C.G., because of her youth, did not discover the condition or realize the risk involved in intermeddling with the substation.

Finally, the court finds that genuine issues of material fact exist regarding the issues of causation and punitive damages.  Thus, the court will deny FirstEnergy Corp.'s motion for summary judgment in all respects.  An appropriate order follows.

**Date:**  **11/03/2015**                    **s/ James M. Munley**
                                            **JUDGE JAMES M. MUNLEY**
                                            **United States District Court**