## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CONNIE GOOD**, *Individually and as* | : | **No. 3:13cv149** |
| *Parent and Natural Guardian of C.G.*, | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **FIRSTENERGY CORP.**, | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition are the parties' motions in limine filed in advance of the pretrial conference. The motions have been fully briefed and are ripe for disposition. For the reasons that follow, the motions will be granted in part and denied in part.

## Background

On May 22, 2012, eleven (11) year old C.G. played with her nine (9) year old brother and a friend near the Birchwood Lakes high voltage electrical substation (hereinafter "the substation"). (Doc. 78-5, Dep. of C.G. II. (hereinafter "C.G. Dep. II") at 1-3).[1] The children were familiar with the substation because they walked past it on their way to and from their school bus stop everyday. (Doc. 77-2, Def.'s Concise Stmt. of Facts

---

[1] All deposition citation page numbers refer to the electronic case file page number located in the upper right-hand corner of the electronically filed document.

(hereinafter "SOF") ¶¶ 16-17).

While playing with her friend and brother on May 22, 2012, C.G. climbed to the top of the substation's front gate, pulled down the barbed wire, and jumped into the interior of the substation.  (Id. ¶ 27).  Once inside the substation, C.G. climbed eight feet up an A-frame structure, which had an energized power line traversing through its center.  (Id. ¶ 28).  Shortly thereafter, C.G. jumped down off the A-frame structure. (Id.)  While jumping down, C.G. made contact with the energized power line.  (Id.)  C.G.'s contact with the power line caused her to catch on fire, resulting in serious injuries.  (Id. ¶ 29; Doc. 79-2, Ex. F, Carol Good Dep. I at 100; Doc. 79-3, Ex. F, Carol Good Dep. II. at 110).  Specifically, C.G. received second and third degree electrical burns over 40.5% of her body including her neck, chest, back and arms, which caused her treating physicians to place her in a medically induced coma for seven (7) weeks. (Doc. 79-2, Ex. F, Carol Good Dep. I at 100; Doc. 79-3, Ex. F, Carol Good Dep. II. at 110).  The parties dispute how C.G. received her injuries.

On January 22, 2013, plaintiff filed a two-count complaint seeking over $75,000 in damages on each count.  (Doc. 1, Compl.).  Count I alleges FirstEnergy Corp. negligently installed, maintained and inspected

the security fencing surrounding the substation.  (Id. ¶¶ 15-25).  Count II

claims the substation is an attractive nuisance. (Id. ¶¶ 26-39).  At the

conclusion of discovery, FirstEnergy Corp. moved for summary judgment,

(Doc. 77), which the court denied on November 3, 2015.  (Doc. 100).

## Discussion

A pretrial conference has been scheduled, and in accordance with

the court's rule, the parties filed various motions in limine seeking to

preclude evidence from trial.  The court will first address plaintiff's motion

in limine.

## I.  Plaintiff's motion in limine

Plaintiff filed a motion in limine seeking to preclude FirstEnergy

Corp.'s experts from testifying at trial.  Specifically, plaintiff argues the

experts' reports do not comply with Federal Rule of Civil Procedure 26 by

failing to: (1) set forth the witness's qualifications including publications

authored in the previous ten years; (2) list cases the witness has testified

at over the past ten years; and (3) list the compensation paid to

FirstEnergy Corp.'s experts.

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of

expert testimony.  Specifically, subsection (B) outlines the requirements

for the witness's expert report.  An expert report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B).

The court agrees with plaintiff that FirstEnergy Corp.'s original expert reports failed to comply with this requirement.  FirstEnergy Corp., however, filed an amendment to their expert reports on January 7, 2016, (Doc. 115), which cures the deficiencies in their expert reports. Specifically, the amendment lists: (1) all cases in which FirstEnergy Corp.'s experts have testified over the past four years; (2) the statement of compensation for FirstEnergy Corp.'s experts; and (3) the curriculum vitae for FirstEnergy Corp.'s experts.  The court will find FirstEnergy Corp.'s original omission harmless and therefore deny plaintiff's motion in limine to exclude FirstEnergy Corp.'s experts from testifying at trial.

4

## II.  FirstEnergy Corp.'s motions in limine

FirstEnergy Corp. has likewise filed several motions in limine.  The court will address each in turn.

## A.  Accessing substation through areas other than the front gate

FirstEnergy Corp. seeks to exclude from trial evidence regarding individuals entering the substation through areas other than the front gate–the same way C.G. accessed the substation.  FirstEnergy Corp. argues this evidence is irrelevant and unfairly prejudicial.  Plaintiff contends that this evidence is relevant because it establishes genuine issues of fact pertaining to whether FirstEnergy Corp. had notice that children had or were likely to trespass into the substation–an element under Pennsylvania's attractive nuisance doctrine.  After careful consideration, the court agrees with plaintiff.

Federal law provides that relevant evidence is generally admissible. FED. R. EVID. 402.  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  FED. R. EVID. 401.  The law provides that relevant evidence may be excluded "if its probative value is substantially

5

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

In the instant matter, plaintiff submitted the deposition testimony of Corbin Farrell (hereinafter "Farrell").  Farrell moved into the Birchwood Lake community in 2001, when he was five (5) or (6) years old.  (Doc. 87-4, Farrell Dep. at 11).  Farrell, along with other children living in the Birchwood area, created a path through the woods to their bus stop–a path that still exists today.  (Id. at 11-12).  The path was located next to the substation.  (Id. at 11-12, 15, 25-26).  Farrell testified that he lifted up a back corner of the substation's fence to gain access to the substation on three (3) or (4) occasions, the last of which occurred ten (10) or more years prior to C.G. and her brother gaining access to the substation.  (Id. at 12-14, 22).  Farrell stated that he left a basketball or soccer ball inside the substation and upon returning to retrieve it, learned that the ball had been removed.  (Id. at 16-17).  According to the defendant, Farrell's testimony pertaining to accessing the substation is not relevant and unfairly prejudicial because he did not climb over the substation's front gate.

This evidence, however, is relevant because it may demonstrate that FirstEnergy Corp. had notice that children had or were likely to trespass into the substation.  Moreover, FirstEnergy Corp.'s conclusory assertion that this evidence is prejudicial is without merit.  FirstEnergy Corp. cites no authority, and our research has uncovered none, to support their assertion that evidence pertaining to prior entries into the substation is unfairly prejudicial.  Indeed, the Third Circuit Court of Appeals requires the opposite conclusion.  See Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980) (noting that Rule 403 does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case. Rather, the rule only protects against evidence that is **unfairly** prejudicial). As such, FirstEnergy Corp.'s motion in limine to preclude this evidence will be denied.

## B.  Height of the substation's fence

FirstEnergy Corp. next seeks to exclude from trial evidence regarding the height of the substation's fence.  Specifically, FirstEnergy Corp. argues the height of the substation's fence is irrelevant because the applicable National Electrical Safety Code (hereinafter "NESC") at the time the substation was constructed failed to set forth any specific

7

requirements for fence construction or height surrounding the perimeter of a substation.  Plaintiff contends the jury should determine whether FirstEnergy Corp. failed to adequately install, maintain and inspect the substation enclosure.

In the instant matter, plaintiff's expert determined FirstEnergy Corp. failed to adequately install or maintain and inspect the enclosure surrounding the substation.  (Doc. 87-6, James M. Orosz's Expert Report at 9).  Specifically, sections of the enclosure were not within the 2007 NESC height requirements and the barbed wire was not adequately installed or maintained.[2]  (Id. at 4-5, 8-9).  Thus, the expert concluded that FirstEnergy Corp.'s failure to adequately install, maintain and inspect the substation's enclosure created an unreasonably dangerous condition causing C.G.'s injury on Tuesday May 22, 2012.  (Id.)

FirstEnergy Corp. argues that the 2007 NESC guidelines plaintiff's expert relied on are not applicable because the substation was "grand-fathered in" under an earlier edition of the NESC guidelines.  FirstEnergy

---

[2] The 2007 NESC standards state that a fence surrounding an electrical supply station must be seven (7) feet or more in height or a combination of a six (6) foot high fence with three (3) or more strands of barbed wire to achieve an overall fence height of not less than seven (7) feet.  (Doc. 87-6, James M. Orosz's Expert Report at 9).

Corp.'s expert indicates that the substation was constructed in 1970 at which time the Fifth Edition of the NESC applied.  (Doc. 116-5, Robert A. Simpson's Expert Report at 8).  The report further states:

> Rules regarding substation perimeter fencing were not approved and issued until June of 1972 or the Sixth Edition. The Fifth Edition had no specifics on fence construction or required height.  The earliest discussions on substation enclosures occurred in the Fourth Edition of the NESC which states use of "suitable inclosing walls or fences" but contains no mention of fence materials or height.

(Id.)

Regardless of whether the 2007 NESC height standard applied to the installation of the perimeter fence, the undisputed evidence establishes that FirstEnergy Corp. adopted the 2007 NESC height standards.  Specifically, FirstEnergy Corp.'s internal memorandum pertaining to monthly substation inspections states:

> **2. Substation Yard and Perimeter – Visually Inspect and record as required:**
>
> 2.4 Substation Fence for the following conditions:
> *          *          *
> 2.4.5.  Per the NESC standard, fence must be a minimum of 7 feet in height (a fence having 6 feet of fabric **plus** a foot of barbed wire is acceptable).

(Doc. 80-2, Ex. 2, Substation Inspection at 22-23).  Moreover, David Anschau, a Met-Ed employee, meticulously inspected the height of the substation's fence and barbed wire to ensure compliance with this 7-foot

9

requirement on a monthly basis over the past eleven (11) years.  (Doc. 80,

Ex. K, Dep. of David Anschau I at 58-61).  Stated differently, FirstEnergy

Corp.'s business decision to incorporate the 2007 NESC height standard

into its monthly substation inspections establishes that the fence's height

is indeed relevant.  Accordingly, the court will deny FirstEnergy Corp.'s

motion in limine to preclude from trial evidence pertaining to the height of

the substations fence.

## C. FirstEnergy Corp.'s 2013 annual report

FirstEnergy Corp. also seeks to preclude from trial any evidence

pertaining to its 2013 annual report as untimely presented, unduly

prejudicial and irrelevant.  Plaintiff argues this evidence is relevant and

admissible.  After careful consideration, the court agrees with the plaintiff.

The local rules provide that "[a] brief in opposition to a motion for

summary judgment and [a responsive statement to the moving party's

concise statement of material facts], together with any transcripts,

affidavits or other relevant documentation, shall be filed within twenty-one

(21) days after service of the movant's brief."  L.R. 7.6.  Plaintiff filed

supplemental exhibits in opposition to summary judgment, including

FirstEnrgy Corp.'s 2013 annual report, on September 16, 2015–seventy-

10

two (72) days after filing her brief in opposition to FirstEnergy Corp.'s motion for summary judgment.

The Third Circuit Court of Appeals has recognized "that local rules play a vital role in the district courts' efforts to manage themselves and their dockets. They facilitate the implementation of court policy, both by setting norms and putting the local bar on notice of their existence, and serve to impose uniformity on practice within a district." Knoll v. City of Allentown, 707 F.3d 406, 411 (3d Cir.2013) (citations omitted) (internal quotation marks omitted). Nevertheless, local rules, including local rule 7.6, must be construed and applied in a manner consistent "with Acts of Congress and [the Federal Rules of Civil Procedure]." 28 U.S.C. § 2071.

Federal law provides that relevant evidence is generally admissible. FED. R. EVID. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. The law provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence." FED. R. EVID. 403.

At oral argument, FirstEnergy Corp. objected to the court considering its 2013 annual report.  (Doc. 98, Oral Argument dated 9/16/15 at 10-11, 32). The court, however, overruled FirstEnergy Corp.'s objection and considered this exhibit in the interest of justice.  (Id.)  Stated differently, the court determined FirstEnergy Corp.'s 2013 annual report is relevant evidence and not unfairly prejudicial.

As stated in our summary judgment opinion:

> Plaintiff argues FirstEnergy Corp.'s 2013 annual report stands in direct contrast to FirstEnergy Corp.'s assertion that it does nothing.  FirstEnergy Corp.'s annual report states "**FirstEnergy is a leading regional energy provider headquartered in Akron, Ohio**.  Our subsidiaries and affiliates are involved in the generation, transmission and distribution of electricity as well as energy management and other energy related services."  (Doc. 95-1, Ex. A, FirstEnergy Corp.'s 2013 Annual Report at 10) (emphasis added).[3]  The annual report also states that "[o]ur 10 utility operating companies form one of the nation's largest investor-owned electric systems based on 6 million customers served within a nearly 65,000-square-mile area of Ohio, Pennsylvania, New Jersey, West Virginia, Maryland and New York."  (Id.)  Therefore, FirstEnergy Corp. holds itself out to the general public as a supplier of electricity.

(Doc. 99, Mem. dated Nov. 3, 2015).

---

[3]  FirstEnergy Corp.'s annual report defines "FirstEnergy" as "FirstEnergy Corp., together with its consolidated subsidiaries."  (Id. at 13).

Moreover, FirstEnergy Corp.'s 2013 annual report is not unfairly prejudicial for three reasons.  First, the 2013 annual report's probative value is high because it may demonstrate FirstEnergy Corp. is more than a mere parent and holding company–i.e. FirstEnergy Corp. is a supplier of electricity.  Second, any unfair prejudice FirstEnergy Corp. may have experienced in plaintiff's late filing in mitigated by the fact FirstEnergy Corp. created the 2013 annual report.  Finally, the 2013 annual report lists financial statements for the years 2011-13, including 2012, the year C.G. sustained her injuries.  (Doc. 95-1, Ex. A, FirstEnergy Corp.'s 2013 Annual Report at 84-173).  Thus, the court will deny FirstEnergy Corp.'s motion to exclude this evidence from trial.

## D.  Omnibus issues

FirstEnergy Corp.'s final omnibus motion in limine raises seven (7) evidentiary issues.  Several issues share common concerns, which the court will address first.

## 1.  Common issues

FirstEnergy Corp. moves to preclude from trial evidence that is generally improper.  Initially, FirstEnergy Corp. seeks to preclude plaintiff from offering into evidence documents and other demonstrative evidence

not produced during discovery.  Because the court has wide discretion on the admissibility of evidence, the court will deny this motion without prejudice to FirstEnergy Corp. reasserting it at trial should the need arise. See Quinn v. Consol. Freightways Corp. of Del., 283 F.3d 572, 576 (3d Cir. 2002) (stating that "trial judges are afforded wide discretion in making rulings on the admissibility of evidence").

Second, FirstEnergy Corp. moves to preemptively prohibit plaintiff from calling non-expert fact witnesses not previously disclosed from testifying at trial.  The court will deny this motion in limine to the extent that if plaintiff calls a previously undisclosed witness, FirstEnergy Corp. will be allowed to depose this witness prior to the witness testifying.

Third, FirstEnergy Corp. seeks to preclude plaintiff from using documents, photographs and other demonstrative evidence during opening statements.  The court will deny this motion in limine to the extent that plaintiff must provide FirstEnergy Corp. with a copy of all demonstrative evidence she wishes to use in her opening statement fourteen (14) days prior to *voir dire*.  If FirstEnergy Corp. objects to any of plaintiff's demonstrative evidence, its objections are due seven (7) days prior to *voir dire*.  The court will review plaintiff's demonstrative evidence

14

and FirstEnergy Corp.'s objection and enter a ruling soon thereafter.

Fourth, FirstEnergy Corp. seeks to preclude plaintiff's experts from testifying beyond the fair scope of their reports and preclude plaintiff from calling expert witnesses that have not been identified as such in discovery. The court will grant FirstEnergy Corp.'s motions in limine on these issues.

## 2.  Preclusion of evidence regarding fees received by defendant's expert

FirstEnergy Corp. next seeks to preclude from trial evidence regarding any fees which FirstEnergy Corp.'s experts have received beyond the past year.  The court notes that the fees that the experts receive may be relevant to establish bias and may affect the manner in which the jury views the witnesses's credibility.  The probative value of this information is not substantially outweighed by its prejudicial effect.  FED. R. EVID. 403.  Therefore, **all fees** FirstEnergy Corp. paid its experts are admissible at trial.[4]

---

[4]  FirstEnergy Corp. cites to a previous memorandum we issued in a different case for the proposition that plaintiff cannot inquire about any fee FirstEnergy Corp. paid its experts beyond one year.  In Bridges v. O'Hern, we limited "the defendant from asking questions about payment received by experts over one year ago."  2012 WL 175408, at *4 (M.D. Pa. Jan. 20, 2012).  In Bridges, however, plaintiff sought to preclude defendant from questioning plaintiff's experts regarding fees that the experts received in

**3.  Preclusion of plaintiff from offering evidence in support of claims for past or future medical expenses.**

FirstEnergy Corp. also seeks to preclude from trial evidence in support of plaintiff's claims for past or future medical expenses.  The court addresses these issues *in seriatim*.

**a. Past medical expenses**

FirstEnergy Corp. seeks to limit the submission of C.G.'s past medical expenses at trial to only those which were actually paid and accepted by C.G.'s health care providers as full and complete payment of C.G.'s past medical bills.  Under Pennsylvania law "'damages are to be compensatory to the full extent of the injury sustained,' and that actual compensation is given 'by graduating the amount of damages exactly to the extent of the loss.'"  <u>Sonlin ex rel. Sonlin v. Abington Mem'l Hosp.</u>, 748 A.2d 213, 219 (Pa. Super. Ct. 2000) (quoting <u>Kaczkowski v. Bolubasz</u>, 421 A.2d 1027, 1029 (Pa. 1980)).  The Pennsylvania Supreme Court has clarified that damages for past medical expenses, although recoverable to the fullest extent of the injury sustained, are nonetheless limited to those

---

previous cases.  <u>Id.</u> at *3.  We placed no limit on questions pertaining to how much a party paid the expert witness, and find no reason to do so now.

expenses that "'have been actually paid, or such as, in the judgment of the jury, are reasonably necessary to be incurred.'" Moorhead v. Crozer Chester Med. Ctr., 765 A.2d 786, 789 (Pa. 2001) (quoting Goodhart v. Pa. R.R. Co., 35 A. 191, 192 (Pa. 1896)).

     For example, in Moorhead, the plaintiff claimed $108,668.31 in past healthcare expenses, but the healthcare provider accepted only $12,160.40 from Medicare and Blue Cross as full payment for the plaintiff's bill. Id. at 788.  The Pennsylvania Supreme Court held that the plaintiff could not recover "illusory" ($108,668.31) past medical expenses, as the amount paid by the plaintiff and the collateral sources ($12,160.40) was far less. Id. at 791.  Thus, the plaintiff in Moorhead could only claim past medical expenses in the amount her health care providers accepted as full and complete payment of her medical bills–$12,160.40. Accordingly, the court will grant FirstEnergy Corp.'s motion in limine limiting the submission of C.G.'s past medical expenses at trial to the amount of C.G.'s past medical expenses that were actually paid and accepted by C.G.'s health care providers as full and complete payment of C.G.'s past medical bills.[5]

---

     [5]  To the extent C.G. may have outstanding past medical expenses that do not fit into this category–i.e. past medical expenses that are in the

**b.  Future medical expenses**[6]

FirstEnergy Corp. next seeks to preclude evidence of C.G.'s future medical expenses from trial.  FirstEnergy Corp., however, has failed to offer any argument in its brief to justify such preclusion.  Thus, the court will deny FirstEnergy Corp.'s motion in limine to preclude future medical expenses.

**Conclusion**

Based upon the above reasoning, plaintiff's motion in limine seeking to preclude FirstEnergy Corp.'s experts from testifying at trial will be denied.  The court will also deny FirstEnergy Corp.'s motions in limine to

_____

process of being billed and reimbursed by her medical insurance–the court will address the admissibility of these past medical expenses at trial.

[6] Pennsylvania law provides that a plaintiff seeking to recover future medical expenses must establish, "by expert testimony, not only that future medical expenses will be incurred, but also the reasonable estimated cost of such services." Mendralla v. Weaver Corp., 703 A.2d 480, 485 (Pa. Super. Ct. 1997) (citing Cohen, 592 A.2d at 729). Pennsylvania law provides an exception to the general rule requiring expert testimony to establish future medical expenses.  Specifically, if "a reasonable basis for the jury to conclude that the medical care rendered in the past is the same as the medical care that will be required in the future, the plaintiff can introduce past medical bills in lieu of expert testimony about future medical costs." Keifer v. Reinhart Foodservices, LLC, 563 F. App'x 112, 117 (3d Cir. 2014) (citing Rogers v. Phila. & Reading Ry. Co., 106 A. 734, 736 (Pa. 1919); Pratt v. Stein, 444 A.2d 674, 697 (Pa. Super. Ct. 1982)).

preclude from trial: (1) evidence regarding individuals entering the substation through areas other than the front gate; (2) evidence pertaining to the height of the substation's fence; and (3) FirstEnergy Corp.'s 2013 annual report.

The court will grant in part and deny in part FirstEnergy Corp.'s omnibus motion in limine.  The court will grant FirstEnergy Corp.'s motions to preclude plaintiff's experts from testifying beyond the fair scope of their reports and preclude plaintiff from calling expert witnesses that have not been identified as such in discovery.  The court will deny FirstEnergy Corp.'s motion to preclude plaintiff from offering into evidence documents and other demonstrative evidence not produced during discovery as premature.  The court will deny FirstEnergy Corp.'s motion to preemptively prohibit plaintiff from calling non-expert fact witnesses not previously disclosed from testifying at trial to the extent that if plaintiff calls a previously undisclosed witness, FirstEnergy Corp. will be allowed to depose this witness prior to the witness testifying at trial.

The court will deny FirstEnergy Corp.'s motion in limine seeking to preclude plaintiff from using documents, photographs and other demonstrative evidence during opening statements to the extent that

plaintiff must provide FirstEnergy Corp. with a copy of all demonstrative evidence she wishes to use in her opening statement fourteen (14) days prior to *voir dire*.  If FirstEnergy Corp. objects to any of plaintiff's demonstrative evidence, its objections are due seven (7) days prior to *voir dire*.  The court will review plaintiff's demonstrative evidence and FirstEnergy Corp.'s objections and enter a ruling soon thereafter.

Additionally, the court will deny FirstEnergy Corp.'s motion in limine seeking to preclude from trial evidence regarding any fees which FirstEnergy Corp. has paid its experts beyond the past year.  The court will grant FirstEnergy Corp.'s motion in limine limiting the submission of C.G.'s past medical expenses at trial to the amount of C.G.'s past medical expenses that were actually paid and accepted by C.G.'s health care providers as full and complete payment of C.G.'s past medical bills.  Finally, the court will deny FirstEnergy Corp.'s motion to preclude evidence of C.G.'s future medical expenses from trial.  An appropriate order follows.

**Date:   02/09/16**                              **s/ James M. Munley**
                                                  **JUDGE JAMES M. MUNLEY**
                                                  **United States District Court**

20